Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Departamento de Transportación Obras Públicas (Unidad A)<br><br>Recurrido<br><br>vs.<br><br>Programa de Solidaridad UTIER<br><br>Recurrente<br><br>Comisión Apelativa del Servicio Público<br><br>Agencia Recurrida | KLRA202400589 | **REVISIÓN ADMINISTRATIVA** procedente de la Comisión Apelativa del Servicio Público<br><br>Caso Núm.: PR-21-002<br><br>Sobre: Petición de Representación (PR-21-002) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Juez Santiago Calderón.

Rivera Colón, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 06 de diciembre de 2024.

Comparece ante nos, el Programa de Solidaridad UTIER (en adelante, UTIER o recurrente), quien presenta recurso de revisión administrativa en el que solicita la revocación de la "Resolución" emitida el 20 de septiembre de 2024,[1] por la Comisión Apelativa del Servicio Público (en lo sucesivo, CASP o recurrida). Mediante dicha determinación, la CASP ordenó el cierre y archivo de la "Petición de Representación" presentada por el recurrente.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, desestimamos el recurso mediante los fundamentos que expondremos a continuación.

### I.

El 25 de octubre de 2001, la CASP certificó a la UAW-Acción Laboral Unitaria y Defensora Local 2341 (a continuación, UAW)

---

[1] Notificada ese mismo día.

como el Representante Exclusivo de la Unidad Apropiada de los Empleados de Campo del Departamento de Transportación y Obras Públicas (en adelante, DTOP). En ese contexto, la UAW y el DTOP firmaron un convenio colectivo con fecha de vigencia desde el 30 de mayo de 2012 hasta el 30 de mayo de 2015.

Así las cosas, el 23 de enero de 2017, la Asamblea Legislativa aprobó la Ley Núm. 3-2017, según enmendada, la cual dispuso lo siguiente:

> *Los convenios colectivos expirados a la fecha del comienzo de la vigencia de esta Ley o que expiren durante la vigencia de la misma, serán extendidos en cuanto a las cláusulas no económicas u otras cláusulas no afectadas por esta Ley, hasta el 30 de junio de 2021. Dicha extensión constituirá impedimento para la presentación y celebración de elecciones de representación.*

> *Una vez terminada la vigencia de esta Ley, los sindicatos que al 1ro. de julio de 2014 representaban a los empleados unionados en cada Entidad de la Rama Ejecutiva, podrán comenzar la negociación de nuevos convenios colectivos, incluyendo cláusulas económicas y no económicas, y las Entidades de la Rama Ejecutiva negociarán los mismos, conforme la normativa y derecho aplicable, y considerando primordialmente las realidades de la situación económica y fiscal de la Entidad de la Rama Ejecutiva y del Gobierno en general. Véase, 3 LPRA sec. 9398.*

Posteriormente, el 30 de junio de 2021, nuestra Asamblea Legislativa aprobó la Ley Núm. 9-2021, la cual establece que:

> *Los convenios colectivos expirados al 30 de junio de 2021 o a la fecha del comienzo de la vigencia de esta Ley o que expiren durante la vigencia de esta, serán extendidos en cuanto a las cláusulas no económicas u otras cláusulas no afectadas por esta Ley, hasta tanto las partes concluyan la negociación de un nuevo convenio colectivo. Dicha extensión constituirá impedimento para la radicación y celebración de elecciones de representación o de descalificación de un representante exclusivo de negociación. Véase, 3 LPRA sec. 9398 nota, Edición de 2019.*

Encontrándose vigente la Ley Núm. 9-2021, el 10 de noviembre de 2021, el Programa de Solidaridad UTIER (UTIER) presentó una "Petición de Representación" ante la CASP, por su

interés de convertirse en el Representante Exclusivo de la Unidad A del DTOP.

Evaluada su petición, el 20 de septiembre de 2024,[2] la CASP emitió una "Resolución" mediante la cual ordenó el cierre y archivo de la "Petición de Representación" presentada por el recurrente. Fundamentó su determinación en que la extensión de los convenios colectivos constituye un impedimento para radicación y/o celebración de elecciones de representación. Al haberse presentado la petición durante la vigencia de un convenio colectivo, razonó que estaba impedida de continuar con su trámite.

Inconforme, UTIER recurre ante esta segunda instancia judicial y señala la comisión de los siguientes errores:

> *Primer Error: Erró la Honorable CASP al ordenar el cierre y archivo de la Petición de Elección, toda vez que se basa en disposiciones que laceran el derecho constitucional a la libertad de expresión.*

> *Segundo Error: Erró la Honorable CASP al ordenar el cierre y archivo de la Petición de Elección, toda vez que se basa en disposiciones que laceran el derecho constitucional a la libertad de asociación.*

> *Tercer Error: Erró la Honorable CASP al concluir que no es posible la celebración de una elección de certificación a tres años de haber sometido la petición de elección.*

**II.**

**-A-**

Los tribunales tienen la responsabilidad de examinar su propia jurisdicción, así como la del foro de donde procede el recurso ante su consideración. *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 500 (2019). La jurisdicción se refiere al "poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias que tiene ante sí". *R&B Power. Inc. v. Junta de Subasta ASG*, 2024 TSPR 24. Los tribunales deben ser celosos guardianes de su jurisdicción y no tienen discreción para asumir

---

[2] Notificada ese mismo día.

jurisdicción donde no la hay. *Pueblo v. Ríos Nieves*, 209 DPR 264, 273 (2022).

En ese sentido, los foros judiciales tenemos el deber ineludible de atender con preferencia los asuntos concernientes a la jurisdicción. *R&B Power. Inc. v. Junta de Subasta ASG, supra.* Esto, pues, "[u]na vez un tribunal determina que no tiene jurisdicción para entender en el asunto presentado ante su consideración, procede la desestimación inmediata del recurso". *Pueblo v. Torres Medina*, 211 DPR 950, 958 (2023). De hecho, la Regla 83 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R.83, faculta a este Foro para, a iniciativa propia o a solicitud de parte, desestimar un recurso por falta de jurisdicción. Regla 83 del Reglamento del Tribunal de Apelaciones.

Es norma reiterada que, para adjudicar un caso, los foros judiciales de Puerto Rico deben tener jurisdicción sobre la materia, así como sobre las partes litigiosas. *FCPR v. ELA et al.*, 211 DPR 521, 530 (2023). La jurisdicción sobre la materia "se refiere a la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal". J.A. Echevarría Vargas, <u>Procedimiento Civil Puertorriqueño</u>, 1.ra ed., Colombia, 2010, pág. 25. Es el Estado el único que puede, a través de sus leyes, privar a un tribunal de jurisdicción sobre la materia, ya sea por disposición expresa o por implicación necesaria. *MCS Advantage v. Fossas Blanco et al.*, 211 DPR 135, 145 (2023). La falta de jurisdicción sobre la materia da lugar a las consecuencias siguientes:

> *(1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. Beltrán Cintrón et al v. ELA et al,* 204 DPR 89, 101-102 (2020).

Por otro lado, la presentación prematura o tardía de un recurso priva de jurisdicción al tribunal al cual se recurre. *Pueblo v. Rivera Ortiz*, 209 DPR 402, 415 (2022). Lo determinante para concluir si un recurso es prematuro o tardío es su fecha de presentación. *Íd.* Un recurso es prematuro cuando se ha presentado con relación a una determinación que se encuentra pendiente y no ha sido resuelta. *Yumac Home v. Empresas Massó*, 194 DPR 96, 107 (2015). O sea, es aquel que se presenta en la secretaría de un tribunal apelativo antes de que este adquiera jurisdicción. *Pueblo v. Ríos Nieves, supra*, a la pág. 274. En cambio, un recurso tardío es el que se presenta luego de transcurrido el término dispuesto en ley para recurrir. *Yumac Home v. Empresas Massó, supra*, a la pág. 107.

Ahora bien, las consecuencias de uno y otro son distintas. La desestimación de un recurso tardío es final, y priva fatalmente a la parte de presentarlo nuevamente. *Pueblo v. Rivera Ortiz, supra*, a la pág. 415. En cambio, un recurso desestimado por prematuro permite a la parte afectada presentarlo nuevamente en el momento oportuno. *Íd.* Esto es, luego de que cuando el foro recurrido resuelva lo que tenía ante su consideración. *Yumac Home v. Empresas Massó, supra*, a la pág. 107.

En resumen, los asuntos jurisdiccionales son privilegiados y deben cumplirse estrictamente porque, de lo contrario, el tribunal revisor no tendrá jurisdicción sobre el asunto y desestimará la reclamación sin entrar en los méritos de la controversia. *R&B Power. Inc. v. Junta de Subasta ASG, supra.*

**-B-**

La Sección 3.14 de la Ley Núm. 38-2017, 3 LPRA sec. 9654, dispone que, al resolver un procedimiento adjudicativo, la agencia administrativa emitirá una Resolución Final que deberá incluir: (1) determinaciones de hecho, siempre y cuando no sean renunciadas;

(2) conclusiones de derecho; y (3) la disponibilidad del recurso de reconsideración o revisión judicial. De igual forma, la precitada disposición legal establece, en términos literales, lo siguiente:

> *La orden o resolución advertirá el derecho de solicitar la reconsideración ante la agencia o de instar el recurso de revisión como cuestión de derecho en el Tribunal de Apelaciones, así como las partes que deberán ser notificadas del recurso de revisión, con expresión de los términos correspondientes. Cumplido este requisito comenzarán a correr dichos términos. Íd.*

Por otro lado, la Sección 3.16 de la Ley 170, 3 LPRA sec. 9656, provee que:

> *Si la agencia concluye o decide no iniciar o continuar un procedimiento adjudicativo en un caso en particular, terminará el procedimiento y notificará por escrito mediante correo ordinario o electrónico a las partes, y a sus abogados de tenerlos, su determinación, los fundamentos para la misma y el recurso de revisión disponible, incluyendo las advertencias dispuestas en la Sección 3.14 de esta Ley.*

Según indicado previamente, la agencia debe advertir a las partes sobre la disponibilidad del recurso de reconsideración o revisión judicial en todo procedimiento final, con el propósito de que estas tengan la oportunidad de recurrir de la decisión, si es que así lo estiman conveniente. Por lo tanto, si al notificar su determinación final la agencia incumple con todas las advertencias que requiere la LPAU, ello constituirá una notificación defectuosa.

Con relación a lo anterior, es norma firmemente establecida que la notificación inadecuada de la determinación final la agencia resguarda el derecho de las partes a cuestionar dicha decisión en el foro judicial. *Comisión Ciudadanos v. G.P. Real Property*, 173 DPR 998, 1014 (2008). Debido a esto, nuestro Tribunal Supremo ha resuelto que una notificación defectuosa no activa los términos para solicitar reconsideración o acudir en revisión judicial. *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 235 (2014). En otras palabras, una notificación defectuosa no activa el término para recurrir en alzada al Tribunal de Apelaciones. *Maldonado v. Junta*

*Planificación,* 171 DPR 46, 59 (2007).  Ahora bien, la tardanza en presentar el recurso apelativo se debe analizar conforme la doctrina de incuria.  *Íd.,* a la pág. 60.

**III.**

Como es sabido, las cuestiones relativas a la jurisdicción del tribunal deben resolverse con preferencia a cualesquiera otras. *Báez Figueroa v. Adm. Corrección,* 209 DPR 288, 298 (2022).  De este modo, nos corresponde determinar, en primera instancia, si la notificación de la "Resolución" recurrida cumple con las garantías del debido proceso de ley o si, por el contrario, procede la desestimación del recurso por falta de jurisdicción.

Tras un análisis de la notificación de la "Resolución" recurrida, concluimos que ésta es evidentemente insuficiente, inadecuada y defectuosa por incumplir con los requisitos recabados en las Secciones 3.14 y 3.16 de la LPAU, *supra.*

Del legajo apelativo ante nos, surge que la CASP omitió incluir en la notificación de su "Resolución" la advertencia sobre el derecho que tienen las partes afectadas a solicitar reconsideración y/o revisión judicial ante este Tribunal de Apelaciones.  Tampoco incluyó expresión de los términos establecidos en ley para ello.

Por tratarse de una notificación defectuosa, carecemos de jurisdicción para atender el presente recurso. Empero, una notificación defectuosa tiene el efecto de que no comiencen a transcurrir los términos para solicitar reconsideración y/o revisión judicial. Por consiguiente, le corresponde a la CASP notificar nuevamente su "Resolución" e incluir las debidas advertencias. Hasta tanto, la "Resolución" recurrida no tendrá efecto legal alguno.

Por las razones expuestas, el recurso de autos es prematuro y no tenemos jurisdicción para entender en el mismo.

**IV.**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, desestimamos el recurso presentado por el Programa de Solidaridad UTIER, por prematuro.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones